I'm Elena Taylor representing petitioners Ms. Lucinda Larios-Vargas and her minor daughter K.A.V.L. This case comes before the court on a petition for review from the Board of Immigration Appeals' decision denying Ms. Larios-Vargas' applications for asylum, withholding of removal, and protection under the Convention Against Torture. The primary issues in this case are first, whether the Board of Immigration Appeals committed legal error in holding Ms. Larios-Vargas to a per se police reporting requirement in analyzing her application for asylum and whether the government of Honduras was unable and unwilling to protect her. The second issue in this case is whether the immigration judge and the Board of Immigration Appeals erred in analyzing Ms. Larios-Vargas' application for protection under the Convention Against Torture as they did not analyze all factors required by the regulations. And finally, the third issue in this case is whether the Board of Immigration Appeals erred in applying a clear error standard of review when this court has determined that acquiescence is a mixed question of law and fact. Turning to the first issue in this case, whether an applicant has established that the government of their country is unable or unwilling to protect them, this court has never applied a per se reporting requirement. An applicant is not required to report the harm that they've experienced to the police in their country if doing so would be futile or would subject them to further abuse. In this case, the immigration judge at JA 81 through 82 did require a per se reporting requirement. And the Board of Immigration Appeals at JA 4 has also held Ms. Larios-Vargas to this requirement. They say, and I quote, In this case, the immigration judge acknowledged that the government of Honduras has severe issues controlling crime and gangs. However, in light of the respondent's failure to report the threats to the police, the immigration judge found that she did not establish that the government of Honduras was unable or unwilling to protect her, end quote. In this decision, by saying this, the board held Ms. Larios-Vargas to a per se police reporting requirement to establish that the government of Honduras was unable or unwilling to protect her. And this is a legal error. I don't know if that's per se. They found it because that's the only evidence in the case. But it seems to me it depends on the context, what the reason was. I mean, in this case, as I understand it, she called four times on the day of the event. Nobody answered the phone for the first three times. And on the fourth time, she reached the police department in another city. And she never followed up after that. So those are the facts of this case. And she must have assumed that the police could have done something or would do something. But I don't I think per se is the mere fact that somebody didn't call automatically. Automatically, it establishes a particular point. In this case, that's the evidence. And there's no explanation that it would be futile. There's no explanation that the policeman called many times and they never came and that type of thing. That's usually the context. Your Honor, we disagree. I mean, my reading of the board. What are you disagreeing with? With the reading of the Board of Immigration Appeals decision that they did. What evidence did your client offer about the government's role? I mean, this is a very thin record. She testified. I read her whole testimony. It's only a few pages. There's no other evidence in there except the country conditions. Well, Your Honor, in her testimony, she stated that she called the police three times herself, had a neighbor call for her, and they didn't get through either. And then the fourth time that Ms. Larios-Vargas called, she did actually get through to the police, and she testified credibly that she was calling the correct police for her department. And they told her that they were not the police for her department. And as Ms. Larios-Vargas testified credibly that she was calling the correct phone number for where she lived, and there's no disputing that, and the immigration judge found her credible, it seems that the police that she did reach lied to her and pretended to be the police for a different area rather than admitting that they could help her. This demonstrates that the police were unable or unwilling to protect her, and that continuing to seek police protection would be futile. So, counsel, I mean, I grant you that there's not a lot of explanation on this issue. But to follow up on Judge Niemeyer's point, if the board were to have said or the I.J. were to have said that, look, you know, the district submitted country conditions, those alone are not sufficient under our law. There was this testimony about, you know, several calls, but we can't say that, you know, rises to the level of futility. I mean, that might be something that it's permitted to do. Our problem is they didn't really say that. The only information we have is about it stated is about not reporting. So, yeah. It's kind of a weird. They never say this is a per se rule. The I.J. seems to kind of grapple with it a little bit. And I understand the argument. But, you know, there's also not a whole lot of evidence on futility here. Well, Your Honor, I do think that the Board of Immigration Appeals did sort of apply a per se rule just in their statement. But the country conditions evidence further supports Ms. Larios-Vargas' testimony that the government of Honduras was unable and unwilling to protect her. And those country conditions, I think, talk about, you know, the real problems, you know, that the government faces in some of these countries. I'm not trying to belittle them in any way, shape or form. But it also talks about efforts that the countries have made to attempt to resist that. So they tend to be ambiguous or at least cut to some extent both ways. And, you know, I think your point's a good one. When you read this, there's references both with the I.J. and the B.A. talking about the failure to report. I think you got a good point there. The other things aren't really explained well. It's just, you know, I'm not sure that if we were looking at the evidence of futility alone or future risk, it's a lot less than we typically see. Well, Your Honor, I think that the record as a whole, while there is certain points of the record that demonstrate that the government is somewhat trying to make efforts to better the situation, just because the government is making efforts to better the situation doesn't mean that these efforts are effective. And all of the evidence in the record demonstrates that the efforts that they're making is not effective. However, you know, looking at the Board of Immigration Appeals analysis of futility, it's very light, and they don't analyze further abuse at all. And Ms. Laris-Vargas is— Their futility analysis actually doesn't make any sense. No, Your Honor. I mean, they say it's futile because they might have heard from someone else. So it's not just light. It's incomprehensible. Yes, Your Honor, we agree. And I think that could be a reason to remand this case. The Board of Immigration Appeals did not properly analyze the questions of futility, and they didn't analyze the questions of subjected to further abuse at all. Despite Ms. Laris-Vargas' testimony that after she called the police, about a week later, I believe, a gang member went up to her and told her that because she called the police, he would kill her. This kind of goes to show that there's evidence that she would be subjected to further abuse by filing a written report if merely calling the police was sufficient for the gang member to threaten to kill her once more. What particular social group were you trying to put her in? Well, Your Honor, in this case, the Board of Immigration Appeals did not address the particular social group or any protected ground. However, I believe that the particular social groups presented at the trial level had to do with, I believe, women was one of them. I'm sorry, I don't quite recall all of the ones that were presented. But I do know the Board of Immigration Appeals did not address the protected grounds in its decision, relying only on the government inability or unwillingness to protect Ms. Laris-Vargas. Though the immigration judge did state that she would have a reasonable fear of future persecution. So I do know at least that much about the immigration judge's underlying decision. Turning to the other issues in this case, if I may, as we have two issues regarding the Board of Immigration Appeals analysis of Ms. Laris-Vargas' application for protection under the Convention Against Torture. First, the immigration judge's decision did not consider all factors required by regulations. At JA-84, the immigration judge analyzed Ms. Laris-Vargas' application for protection under the Convention Against Torture and addressed only whether or not Ms. Laris-Vargas was subjected to past torture. However, the regulations clearly outlined four factors that an immigration judge should consider. In fact, the regulations say that they shall consider this. These factors are whether the applicant was subjected to past torture, the ability to relocate within the country of torture, evidence... Counsel, if there's a finding that there has not been torture and you haven't met your burden of future torture, the relocation is only if there's torture in the first place. Sure, it says all things, but you don't get to the relocation issue unless you got torture where you lived in the first place. Respectfully, Your Honor, there is no requirement for past torture. It's a future-looking analysis, and the immigration judge only considered past torture. Well, I mean, maybe they talked about that, but I think they found you had not met your burden of showing future torture with respect. I think they combined it with the acquiescence, so maybe you're right in the sense that it was combined into one sentence. But I guess my point on the relocation is what I'm getting at, is that you don't need to relocate if you haven't shown the risk of torture if you returned in the first place. I understand that, Your Honor, but in analyzing whether an applicant would be subjected to future torture, the immigration judge is meant to consider all four factors, and the immigration judge merely considered past torture rather than all four factors. And determining whether the applicant would be subjected to torture, the immigration judge is required to consider all four. And this is at 8 CFR 1208.16c that outlines these factors and states that the immigration judge shall consider these factors, but the immigration judge merely considered the first factor and found that that would be sufficient to find the applicant would not be subjected to future torture. As a result, the Board of Immigration Appeals as well affirmed this finding, and this is a legal error to only analyze one prong of a four-part framework requiring remand. And then reaching my third and final issue as to the applicant's application for protection under the Convention Against Torture, the Board of Immigration Appeals reviewed the immigration judge's decision as to government acquiescence for clear error. In Cruz-Quintanilla v. Whitaker, this court has determined that government acquiescence is a mixed question of law and fact. What would happen or what did happen is a factual question, and whether that's sufficient to show that the government or a public official would consent to or acquiesce to torture is a question of law. And in this decision, the immigration judge found that there would be no government acquiescence, and the Board of Immigration Appeals only reviewed this for clear error without acknowledging that this involves a question of law as well. Can I interrupt you? Of course. Just looking back at the IJ at J84, the immigration judge says that the court does not find that it's more likely than not that she would be tortured or killed upon return to Honduras. And so they did make that finding. And then they said even if there is a reasonable fear of future torture, the response has not shown that it would be with the consent or acquiescence of the government official. I mean, you said they didn't consider it, but as I read it, they did. Well, Your Honor, the immigration judge did consider whether or not Ms. Laris-Vargas would be subjected to torture, but in doing so did not address every part of the analysis that she was supposed to address. She addressed the past torture and the government acquiescence. But ACFR 1208.16C requires that an adjudicator consider four factors, and she considered only past torture and government acquiescence. She didn't just say past torture. She said it wouldn't be tortured or killed upon return. That's future. Yes, Your Honor, but that doesn't address the other three factors. It doesn't address the relocation. It doesn't address the gross mass human rights violations in the country or other relevant evidence that the adjudicator is supposed to consider. Well, why would you have to consider those if you find the first ones? It wouldn't lead to a—this is what Judge Qualabong just said earlier— it wouldn't lead to a requirement to analyze going someplace else because there's no risk even if she went back to her home space. Well, Your Honor, to come to this conclusion— I mean, it sounds like you're asking for a mechanical application of regulations or factors that are relevant. In other words, if you find that there's likelihood of torture or there was past torture and there is going to be future torture, can that be obviated by going to another portion of the country? But if you don't reach that, answer the first question right, you'd never have to get to the second one. And they did consider country conditions. You know, it's sort of—they don't tick the boxes and you're saying there's error. But in substance, they addressed what the statute requires that be addressed. That is, under CAT, you have to find some state-sponsored torture. Your Honor, my time has expired. May I briefly answer? Yes, sure. Thank you, Your Honor. I'm not asking that this court apply a strict requirement for what an immigration judge is supposed to consider, but this court's law has held that an immigration judge is supposed to consider all evidence in a case and to fail to analyze three key parts of a legal framework— Yeah, but you've got to start with facts. And the facts—this woman testified fairly generally. She speculated about a couple of things. Her testimony is only over a few pages and there are no other witnesses. And all we have is the state conditions. And so that's the whole case. Now you want—I don't know what you want. Talk about various possibilities that could have happened or— No, Your Honor. What we want is for the adjudicators to consider all prongs of a legal framework that is binding on the agency. And the agency only considered the first prong. Okay. Thank you, Your Honor. Yeah, thank you. All right. We'll hear Mr. Nardi. Good morning, Your Honors. May it please the Court, Anthony Nardi on behalf of the respondent, Attorney General Garland. Excuse me, Your Honor. Respondent has two main points in this case. First, the petitioner failed to demonstrate that it would be futile or subject her to further abuse to continue to pursue the protective process. And accordingly, under this Court's precedent, Orlando V. Barr, she's abandoned the protective process and cannot show that the government of Honduras would be unable or unwilling to protect her. Second, with respect to cat protection, the petitioner also failed to demonstrate that it is more likely than not that she would be subject to torture upon removal by or with the consent or acquiescence of the Honduran government. And for those two reasons, the Court should deny the petition for review. Counsel, if I could focus on your first point there. Both the IJA and the BIA give extensive discussion about the failure to report. And I'm not seeing where they've said there's any other reason that they're denying the claim other than the failure to report. Now, the BIA does talk about our case with futility. And so it seems to maybe recognize this issue of futility and risk of future harm. But the only discussion it gives of it is, I mean, I probably shouldn't have said it the exact way I said it before, but it's talking about futility in a way that really doesn't seem to deal with futility and doesn't address the risk of harm at all. So where do we get anything besides the failure to report in either the IJA decision or the BIA decision? Yes, Your Honor. I think in the Board's decision, they do note that there are these two exceptions to the reporting requirement after they cite Orellana. Right. And I think it comes from the fact that in many of this Court's and the Ninth Circuit's decisions looking at this framework of futility and further abuse, these two elements oftentimes get conflated. Particularly when discussing futility and the collaboration between criminals and the law enforcement. Particularly in this Court's decision in Orellana v. Barr, you noted that even though it was framed initially in futility language, it would also have subjected the petitioner to further abuse because the police showing up were leading to more violence. Additionally, in this Court's decision in Portillo Flores, where actually there the petitioner was being persecuted because the gangs were searching for his sister, when the police showed up at his mother's house, the petitioner's mother saw that the actual gang members who were searching for the petitioner were with the gang members. And there the Court, while not holding, asserted that was strong evidence of futility, but also that would lead to further abuse because while it was futile to go to the police that were directly working with the gangs, it would also lead to further abuse because if you did contact those police officers, they would then clearly tell the gang members, which would also lead to further abuse. And so while I agree that perhaps that first line of the Board's decision when looking at the two alternatives is perhaps overstated, I think the rest of the Board's analysis shows that they did and were thinking about these two elements. Well, actually, the rest of it is the only thing they talk about is the failure to report. After that, don't they? Yes. Well, I'm sorry, Your Honor. I would say that after the sentence starting first on page 4 in the fourth paragraph, then they go on to look to the futile and the further abuse. Right. The we cannot, the citation in the we cannot language? Yes, Your Honor. Good. And just I think the age to move to further abuse, I think the agency properly considered the evidence that is in the record here, that petitioner stated that her family had previously given information about her to the gang as unprompted. She also testified that she was not entirely sure how the individual gang member who was trying to persecute her had gotten knowledge that she called the police. She stated that it could have come from her family as they had priorly given information. Or as when she made that fourth phone call, she was no longer locked inside of her house. She was outside and there were people around who she was not sure, but she said it might have been gang members themselves. And that could have been another avenue of how the gang members learned that she had called the police. And I think for that reason, it was reasonable for the board to determine that she failed to carry her burden, as it is the burden of the petitioner to show that it would be futile or subject to her further abuse in that context. And just to also discuss a point my colleague raised regarding the call to the police and whether or not the police were lying, I think two things can be true at once. This was only raised twice in the testimony. The first time on direct exam, the petitioner stated, I called the police three times and they didn't answer. My neighbors called them. When I called the fourth time, they told me they were not the police from my area and that I was calling the police from San Pedro Sula. She was asked, did you call any other police? She stated no. And then the cross-examination, the only information we gained about that is the question was, when you tried to call the police during the incident, were you calling the number for police in San Pedro Sula? And she stated, I called the one from Progreso Yoro, where I'm from. And then she was asked, were you calling the wrong number? And she stated, I dialed the same number and they told me they were not police in the area where I lived. I think two things can be true at the same time. I think the petitioner did credibly testify, but I do not think those statements necessitate the finding or logically follows that it was therefore the police were lying to her about where they were from. She might have simply been mistaken, but that does not show any light on the credibility of her as a witness. I think for those reasons, Your Honors, the agency properly put the burden on the petitioner to show that it would have been futile or subject to further abuse and concluded that she had not met that burden. Importantly, she could not meet the standard for unable or unwilling. And moving to my second point with regard to cat protection, here the agency properly considered all of the relevant factors. First, the IJ found that she had not been- What I want to think about is how we look at the finding regarding government consent and control. The BA found that, and I think our job then is to look at that and we would reverse if it was a legal error. And we would reverse if there's no substantial evidence of the finding, of the conclusion. I think you might have a decent argument that there's no- It would be hard for us to say there's no substantial evidence given the thinness of the record that we've talked about before. The real question is whether there's a legal error. And I think the real question is whether there's a legal error there. And that's what I think your colleague is arguing. And there's some basis for it. I mean, I guess your position is there's no legal error at the BA level at least because they've recognized the exceptions. Even if they didn't articulate it the best way, there's substantial evidence that doesn't compel the opposite result? Yes, Your Honor. All right, you can talk about Kat. I'm sorry to cut you off there. So just going back to Kat, the IJ initially started by stating that the petitioner had not suffered past torture, which is one of the elements under the regulations. She then went on to find that the petitioner, even assuming and incorporating the country conditions evidence into her analysis, the IJ found that the future threats, the two unfulfilled threats, were too speculative to constitute a clear probability of future torture. And in particular, the IJ did note the country conditions evidence, which is outlined at pages 73 and 74 of the record, and did state that there was a general existence of pattern or practice of human rights abuses, but that without more evidence, as this court has found in both Singh and Lizama, without more evidence, those country conditions alone cannot uphold a Kat denial. And unless the court has any further questions regarding those two. Thank you, Mr. Norton. Ms. Taylor? Thank you, Your Honor. So I'd like to make a few points on rebuttal. First, I would point out that the Board of Immigration Appeals, even when considering whether it would be futile for Ms. Vargas to file a report, as we've discussed, there is issues in their analysis, but they also went beyond their scope of authority by engaging in fact-finding when they discussed whether filing a police report would be futile. In this case, the immigration judge didn't address futility at all, and futility would involve a question of fact. It looks at what would happen and then whether that rises to the level of futility, and the Board of Immigration Appeals had to address both in the first instance because the immigration judge did not address it at all, and so the Board went beyond its authority to engage in this fact-finding. Wouldn't there have to be some evidence in the record to trigger that kind of finding? In other words, if the record was totally blank about reporting, nothing. Nobody asked the question, and the petitioner just didn't say anything about going to the police or the government or futility or anything. What's the IJ and the Board supposed to do when there's a total absence of evidence? Well, Your Honor, if there's a total absence of evidence, which I don't believe is present in this case, but in another case where there is no evidence of any reporting to the police, then I would say they still have to at least acknowledge that the standard does not require a police report if there is no evidence of calling the police. But perhaps in that case, the analysis does not have to be as in-depth when there's no evidence of any attempt. Ultimately, it has to be imputed to the state, and usually one way to do that is to make a report or call the police or have the police come or whatever, and they fail to do it. But my question is, really, when there's an absence of any evidence, is it just a failure establishing the elements of an asylum claim? Well, Your Honor, I would say in a case where there's an absence of that and the immigration judge wants to rest on a different prong of the asylum claim, then they can rest on that. Well, there's no prong because there's no evidence. In other words, you're assessing evidence. And if they... Well, all right. I won't press it any further. Let me follow up, Mike, and exclude from this right now the fact-finding issue that you just talked about. We can deal with that later if need be. But putting that aside, as I was just talking about with your colleague, it seems to me the way we look at this is we look and see whether the DA made legal error. And I think that's what you've said. They've done it by imposing a per se requirement of reporting. I think... I'm not asking you to... Let's assume we don't think that happened. That they... At the BIA level, let's acknowledge the legal test. And, you know, but there's this question about how they explain futility. It might be explainable or it might not be explainable. If we don't think there's legal error, isn't our responsibility to then look at the record ourselves and see whether substantial evidence compels the opposite result? Yes, Your Honor. That is what we would look to next. If there's no legal error, we look to the facts and look for substantial evidence. And I think substantial evidence is clear in this case. Ms. Lourios-Vargas made every attempt to report to the police by calling five times, one time with the help of a neighbor. If that's not sufficient, then I don't know what is. Plus, the country conditions evidence makes clear that the police and the government of Honduras is unable and unwilling to protect her and that filing a police report would have been futile and would have subjected her to further abuse. Her credible testimony, I understand my colleague's point, but is that she called the correct police department and there was no follow-up on cross-examination to further probe that point. And the immigration judge found her testimony credible. So the testimony is that she called the police from her area and they told her that they were not the police from her area. That is sufficient, plus the country conditions evidence, plus all of this together. The record compels this. And then as to final points on CAT, in Rodriguez-Arias, this court has found that country conditions alone can be sufficient. In CAT cases, to show certain prongs of it, as for government acquiescence and other things. And in this case, there's plenty of country conditions, but I see my time has expired. Thank you. Thank you very much.
judges: Paul V. Niemeyer, A. Marvin Quattlebaum Jr., Henry F. Floyd